UNITED STATES DISTRICT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| Daniel L. Tabb, Jr. | } | |
| | } | |
| PLAINTIFF | } | |
| | } | |
| Vs. | } | AMENDED VERIFIED CLAIM FOR DAMAGES |
| | } | |
| ATLANTIC LAW GROUP, LLC | } | Case No.: 16-cv-00541 (GMS) |
| | } | |
| DEFENDANT | } | |

COMES NOW Daniel L. Tabb, Jr. to bring this action against ATLANTIC LAW GROUP,

LLC (hereinafter "ALG") Defendant for violation of the Fair Debt Collection Practices Act.

## I.    INTRODUCTION

1.     This action is due to the improper and misconduct by Defendant in attempt to

collect an alleged debt. Defendant is a debt collector defined in 15 U.S.C. section 1692a (6).

Plaintiff is a consumer defined in 15 U.S.C. section 1692a (3). Defendant sent Plaintiff a dunning

notice in connection in an attempt to collect a debt from Plaintiff. Defendant communication to

Plaintiff also consists of false and misleading representations which is in violation of 15 U.S.C.

section 1692(e)(10) and section 1692(e)(11). The Plaintiff actions before this court is to recover

statutory and actual damages, cost, fees and expenses incurred by Plaintiff, prior to and during

the pendency of this action. Plaintiff has pursued all of its administrative remedies and those

explicitly written in the FDCPA. Defendant is being sued for violating the Fair Debt Collection

Practices Act (hereinafter "FDCPA") under 15 U.S.C. section 1692e(10) and 1692e(11).

## II. PARTIES

2.      Daniel L. Tabb, Jr. is the Plaintiff is this action. Daniel L. Tabb, Jr. is a consumer as defined in 15 USC 1692a(3) because he is a natural person. Plaintiff is a consumer because he engage in a consumer transaction in which the subject of the transaction incurred consumer goods for personal, family and household purposes.

3.      Defendant ALG is a debt collector as defined in 15 USC 1692a(6).  Defendant ALG is in the business of collecting defaulted debt through the use of interstate commerce and the mails. Defendant ALG principal place of business is located at 913 North Market Street, Suite 1011, Wilmington, DE 19801.

## III. JURISDICTION & VENUE

4.      Venue for the within action is properly within the jurisdiction of this Court upon the ground, that one Plaintiff resides within this Judicial district of the County of New Castle Delaware. The court also has jurisdiction pursuant to 15 USC 1692.

## IV. VERIFIED FACTS

### A.    Defendant False and Misleading Representations on August 3, 2015

5.      Plaintiff received two dunning communications from Defendant ALG on or about August 3, 2015 indicating that Defendant that the communication was from a debt collector attempting to collect a debt. See Exhibit 1

6.      Defendant sent the dunning communications on the behalf of Ocwen Loan Servicing, LLC (hereinafter "Ocwen").

7.      Defendant identified its functioning capacity as a debt collector attempting to collect a debt. See Exhibit 1

8.      Defendant regularly collects or attempts to collect debts owed to another entity.

9.  Defendant was attempting to collect a debt from Plaintiff.

10.  Defendant claimed that Plaintiff was in default in the communication.

11.  Defendant claimed that the loan had been accelerated as the result of Plaintiff default and Ocwen referred the matter to the Defendant.

12.  Defendant claimed that Plaintiff owed $365,632.15 in the communication. See Exhibit 1

13.  Defendant claimed that the creditor to whom the alleged debt was owed to is The Bank of New York Mellon f/k/a The Bank of New York, as successor trustee for JPMorgan Chase Bank, N.A., as trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2005-2 (hereinafter "Trust").

14.  Prior to Defendant August 3, 2015 communications, Ocwen never accelerated the loan and demanded payment in the amount of $35,632.15 from Plaintiff.

15.  Plaintiff does not have an outstanding debt in the amount of $365,632.15 that is owed to Ocwen or the Trust.

16.  Plaintiff challenged the questioned debt by sending Defendant a Notice of Dispute disputing the alleged debt on or about August 28, 2015. See Exhibit 2

17.  Plaintiff within the Notice of Dispute, specifically requested that Defendant produce the notice of acceleration that was sent to Plaintiff in the mail. See Exhibit 2

18.  Defendant communications sent to Plaintiff constitutes debt collection activity under the Fair Debt Collection Practices Act (hereinafter "FDCPA").

19.  Defendant made false and misleading representations in the communication in an attempt to collect a debt.

20.     Defendant misrepresented the alleged amount of $365,632.15 claimed to be owed from Plaintiff in the communication.

21.     Defendant misrepresented the status of loan being in default due to the fact that the debt has already been discharged through Plaintiffs Chapter 7 bankruptcy discharge order. See Exhibit 3

22.     Defendant misrepresented that the loan was accelerated.

23.     Defendant failed to provide verification and validation the alleged debt within thirty (30) days.

24.     Defendant never verified or validated anything after Plaintiff disputed the alleged debt.

25.     Defendant used deceptive means in an attempt to collect a debt from Plaintiff.

26.     Defendant August 3, 2015 communications can be in violation of the specific 15 U.S.C. section 1692e (2) and (10).

27.     Defendant violated provisions of the FDCPA.

**B.     Defendant False and Misleading Representations on December 9, 2015**

28.     The verified facts set forth in the preceding paragraphs five (5) through twenty-seven (27) are incorporated herein by reference.

29.     On or about December 9, 2015, Defendant sent Plaintiff a subsequent communication responding to Plaintiff's August 28, 2015 Notice of Dispute.

30.     Defendant December 9, 2015 communication fails to state that the communication was from a debt collector attempting to collect a debt. See Exhibit 4

31.     Defendant attempted to use a copy of the note to deceive Plaintiff that is was verification and validation of the discharged debt.

32.    Defendant attempted to use a copy of the mortgage to deceive Plaintiff that is was verification and validation of the discharged debt.

33.    Defendant attempted to use a copy of an assignment of mortgage to deceive Plaintiff that is was verification and validation of the discharged debt.

34.    Defendant attempted to deceive Plaintiff to contact Defendant for reinstatement or payoff quotes as an attempt to collect a discharged debt from Plaintiff.

35.    Defendant never provided verification or validation of the alleged debt.

36.    Defendant December 9, 2015 communication can be in violation of 15 U.S.C. section 1692e (2)(A), (10) and (11).

37.    Defendant violated provisions of the FDCPA.

38.    Plaintiff seek the court administrative power to conduct a limited judicial review of Plaintiff enforcement actions taken in compliance with the FDCPA.

39.    Plaintiff request that the court conduct a limited judicial review of the verified claims in this action.

## COUNT ONE: Defendant August 3, 2015 communication Violates the FDCPA under 15 U.S.C. 1692e(2)(A), (10)

40.    The verified facts set forth in the preceding paragraphs one (1) through twenty-eight (28) are hereby incorporated as referenced.

41.    Plaintiff is a consumer as defined in 15 USC 1692a (3).

42.    Defendant ALG is a debt collector as defined in 15 USC 1692a (6).

43.    Defendant is attempting to collect an alleged debt as defined in 15 USC 1692a (5).

44. Upon information and belief Plaintiff received two dunning communications from Defendant ALG on or about August 3, 2015 indicating that Defendant that the communication was from a debt collector attempting to collect a debt. See Exhibit 1

45. Upon information and belief Defendant sent the dunning communications on the behalf of Ocwen Loan Servicing, LLC (hereinafter "Ocwen").

46. Upon information and belief Defendant identified its functioning capacity as a debt collector attempting to collect a debt. See Exhibit 1

47. Upon information and belief Defendant regularly collects or attempts to collect debts owed to another entity.

48. Upon information and belief Defendant was attempting to collect a debt from Plaintiff.

49. Upon information and belief Defendant claimed that Plaintiff was in default in the communication.

50. Upon information and belief Defendant claimed that the loan had been accelerated as the result of Plaintiff default and Ocwen referred the matter to the Defendant.

51. Upon information and belief Defendant claimed that Plaintiff owed $365,632.15 in the communication. See Exhibit 1

52. Upon information and belief Defendant claimed that the creditor to whom the alleged debt was owed to is The Bank of New York Mellon f/k/a The Bank of New York, as successor trustee for JPMorgan Chase Bank, N.A., as trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2005-2 (hereinafter "Trust").

53.     Upon information and belief Prior to Defendant August 3, 2015 communications, Ocwen never accelerated the loan and demanded payment in the amount of $35,632.15 from Plaintiff.

54.     Upon information and belief Plaintiff does not have an outstanding debt in the amount of $365,632.15 that is owed to Ocwen or the Trust.

55.     Upon information and belief Plaintiff challenged the questioned debt by sending Defendant a Notice of Dispute disputing the alleged debt on or about August 28, 2015. See Exhibit 2

56.     Upon information and belief Plaintiff within the Notice of Dispute, specifically requested that Defendant produce the notice of acceleration that was sent to Plaintiff in the mail. See Exhibit 2

57.     Upon information and belief Defendant communications sent to Plaintiff constitutes debt collection activity under the Fair Debt Collection Practices Act (hereinafter "FDCPA").

58.     Upon information and belief Defendant made false and misleading representations in the communication in an attempt to collect a debt.

59.     Upon information and belief Defendant misrepresented the alleged amount of $365,632.15 claimed to be owed from Plaintiff in the communication.

60.     Upon information and belief Defendant misrepresented the status of loan being in default due to the fact that the debt has already been discharged through Plaintiffs Chapter 7 bankruptcy discharge order. See Exhibit 3

61.     Upon information and belief Defendant misrepresented that the loan was accelerated.

62. Upon information and belief Defendant failed to provide verification and validation the alleged debt within thirty (30) days.

63. Upon information and belief Defendant never verified or validated anything after Plaintiff disputed the alleged debt.

64. Upon information and belief Defendant used deceptive means in an attempt to collect a debt from Plaintiff.

65. Upon information and belief Defendant August 3, 2015 communications is in violation of the specific 15 U.S.C. section 1692e (2) and (10).

## COUNT TWO: Defendant December 9, 2015 communication Violates the FDCPA under 15 U.S.C. 1692e(2)(A), (10)

66. The verified facts set forth in the preceding paragraphs one (1) through twenty-eight (28) are hereby incorporated as referenced.

67. Plaintiff is a consumer as defined in 15 USC 1692a (3).

68. Defendant ALG is a debt collector as defined in 15 USC 1692a (6).

69. Defendant is attempting to collect an alleged debt as defined in 15 USC 1692a (5).

70. Upon information and belief on or about December 9, 2015, Defendant sent Plaintiff a subsequent communication responding to Plaintiff's August 28, 2015 Notice of Dispute.

71. Upon information and belief Defendant December 9, 2015 communication fails to state that the communication was from a debt collector attempting to collect a debt. See Exhibit 4

72. Upon information and belief Defendant attempted to use a copy of the note to deceive Plaintiff that is was verification and validation of the discharged debt.

73. Upon information and belief Defendant attempted to use a copy of the mortgage to deceive Plaintiff that is was verification and validation of the discharged debt.

74. Upon information and belief Defendant attempted to use a copy of an assignment of mortgage to deceive Plaintiff that is was verification and validation of the discharged debt.

75. Upon information and belief Defendant attempted to deceive Plaintiff to contact Defendant for reinstatement or payoff quotes as an attempt to collect a discharged debt from Plaintiff.

76. Upon information and belief Defendant never provided verification or validation of the alleged debt.

77. Upon information and belief Defendant December 9, 2015 communication is in violation of 15 U.S.C. section 1692e (2)(A), (10) and (11).

## DEMAND FOR REMEDY

WHEREFORE, Plaintiff demands judgment as follows;

(a)    Statutory Damages of $~~8,000~~ $12,000.00 FDCPA;

(b)    Actual Damages of $365,632.15 FDCPA;

(c)    and Award Plaintiff Fees of Cost of This Action.

Daniel Tabb Jr.

Daniel L. Tabb, Jr.
202 E. Wayne Way
Middletown, DE 19709

Dated: October 10, 2017

UNITED STATES DISTRICT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| Daniel L. Tabb, Jr. | } |
|  | } |
|    PLAINTIFF | } |
|  | } |
| Vs. | } |
|  | } |
| ATLANTIC LAW GROUP, LLC | }   Case No.: 16-cv-00541 (GMS) |
|  | } |
|    DEFENDANT | } |
|  | } |

## **CERTIFICATE OF SERVICE**

I, Daniel L. Tabb, Jr., certify that a copy of the Amended Complaint was mailed on

October 10, 2017, U.S. Mail Certified Mail Return Receipt Requested via first class mail to

ATLANTIC LAW GROUP, LLC, 913 North Market Street, Suite 1011, Wilmington, DE 19709.

Daniel L. Tabb, Jr.
202 E. Wayne Way
Middletown, DE 19709

Dated: October 10, 2017

UNITED STATES DISTRICT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| Daniel L. Tabb, Jr. | } | |
| | } | |
| PLAINTIFF | } | |
| | } | |
| Vs. | } | Case No.: 16-cv-00541 (GMS) |
| | } | |
| ATLANTIC LAW GROUP, LLC | } | |
| | } | |
| DEFENDANT | } | |

## **VERIFICATION**

I, Daniel L. Tabb, Jr., Plaintiff, verify that the facts set forth in the foregoing Response

Brief in Opposition to Defendants Motion to Dismiss are true and correct to the best of my

information knowledge, and belief.

"I, Daniel L. Tabb, Jr., declare under penalty of perjury under the laws of the Delaware

Republic and United States of America that the foregoing is true and correct.

Daniel Tabb Jr.
Daniel L. Tabb, Jr.
202 E. Wayne Way
Middletown, DE 19709

Dated: October 10, 2017

## "EXHIBIT 1"

**Atlantic Law Group, LLC**
**P.O. Box 2548**
**Leesburg, VA 20177-2548**

FILE. 564331

MRS. DANA L. TABB
202 EAST WAYNE WAY
MIDDLETOWN, DE 19709



ATLANTIC

30 North Maple Street Suite 14
Prince, DE 19901
T: 302 659-4914  F: 302 242-0061
www.atlanticlawgrp.com

PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, THIS IS A COMMUNICATION FROM
A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

IN THE EVENT YOU ARE SUBJECT TO AN AUTOMATIC STAY ISSUED BY A UNITED STATES
BANKRUPTCY COURT OR THE REFERENCED DEBT HAS BEEN DISCHARGED IN BANKRUPTCY,
THIS COMMUNICATION IS NOT INTENDED TO BE AN ATTEMPT TO COLLECT A DEBT.

IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS.
PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO PROTECTIONS UNDER THE
SERVICEMEMBERS CIVIL RELIEF ACT.

July 28, 2015

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED and FIRST CLASS MAIL

Mrs. Dana L. Tabb
202 East Wayne Way
Middletown, DE 19709

> RE:  Our File No. 564331
> Property Address: 202 East Wayne Way
> Middletown, DE 19709

Dear Mrs. Tabb

This law firm has been retained by Ocwen Loan Servicing, LLC regarding the Mortgage which
encumbers the above real property. The Note evidencing the loan in the original principal amount
of $420,000.00 and the Mortgage are collectively called the "Loan."

According to the records of our client, your Loan is in default. **As a result, the Loan has been
accelerated and Ocwen Loan Servicing, LLC has referred the matter to our office for
further action. Please see the next page for a statement of the amount owed and
important additional information.**

You may have the right to reinstate the Loan by paying all past due installments, late charges,
delinquent taxes, insurance premiums, and costs and fees incurred in the foreclosure. To
request reinstatement information, contact our Loan Resolution Department at (703) 777-7101.

**Any right you may have to reinstate your Loan and the procedures for reinstatement
outlined above do not alter or amend your validation rights as described on the back of
this notice.**

Sincerely.

Daniel T. Conway, Esquire, I.D. No 5599
Atlantic Law Group. LLC

# VALIDATION OF DEBT NOTICE PURSUANT TO 15 USC §1692

1. The amount of the debt as of August 3, 2015 is $365,632.15.

   Because of interest, fees and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount stated above. Please contact Ocwen Loan Servicing, LLC or Atlantic Law Group, LLC at (703) 777-7101 to obtain an updated payoff amount.

2. The name of the creditor to whom the debt is owed is The Bank of New York Mellon f/k/a The Bank of New York as successor trustee for JPMorgan Chase Bank, N.A., as Trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2005-2.

3. Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Atlantic Law Group. LLC.

4. If you notify Atlantic Law Group. LLC in writing within the thirty day period that the debt, or any portion thereof, is disputed, Atlantic Law Group, LLC will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to you by the debt collector: and

5. Upon your written request within the thirty day period, Atlantic Law Group, LLC will provide you with the name and address of the original creditor. if different from the current creditor.

Our File No. 564331

**Atlantic Law Group, LLC**
**P.O. Box 2548**
**Leesburg, VA 20177**

USPS CERTIFIED MAIL™



9214 8900 0017 8600 0000 3133 54

FILE: 564331

MR. DANIEL L. TABB, JR.
202 EAST WAYNE WAY
MIDDLETOWN, DE 19709



ATLANTIC
LAW GROUP LLC

315 North Market Street Suite 101
Wilmington DE 19801
P 302-355-8800 F 302 213-0041
www.atlanticlawgrp.com

**PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**IN THE EVENT YOU ARE SUBJECT TO AN AUTOMATIC STAY ISSUED BY A UNITED STATES BANKRUPTCY COURT OR THE REFERENCED DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS COMMUNICATION IS NOT INTENDED TO BE AN ATTEMPT TO COLLECT A DEBT.**

**IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS. PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT.**

July 28, 2015

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED and FIRST CLASS MAIL

Mr. Daniel L. Tabb. Jr.
202 East Wayne Way
Middletown. DE 19709

        RE:    Our File No. 564331
                 Property Address: 202 East Wayne Way
                 Middletown, DE 19709

Dear Mr. Tabb

This law firm has been retained by Ocwen Loan Servicing, LLC regarding the Mortgage which encumbers the above real property. The Note evidencing the loan in the original principal amount of $420,000.00 and the Mortgage are collectively called the "Loan."

According to the records of our client, your Loan is in default. **As a result, the Loan has been accelerated and Ocwen Loan Servicing, LLC has referred the matter to our office for further action. Please see the next page for a statement of the amount owed and important additional information.**

You may have the right to reinstate the Loan by paying all past due installments, late charges, delinquent taxes, insurance premiums, and costs and fees incurred in the foreclosure. To request reinstatement information, contact our Loan Resolution Department at (703) 777-7101.

**Any right you may have to reinstate your Loan and the procedures for reinstatement outlined above do not alter or amend your validation rights as described on the back of this notice.**

Sincerely,

Daniel T. Conway, Esquire, I.D. No 5599
Atlantic Law Group. LLC

# VALIDATION OF DEBT NOTICE PURSUANT TO
# 15 USC §1692

1. The amount of the debt as of August 3, 2015 is $365,632.15.

   Because of interest, fees and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount stated above. Please contact Ocwen Loan Servicing, LLC or Atlantic Law Group, LLC at (703) 777-7101 to obtain an updated payoff amount.

2. The name of the creditor to whom the debt is owed is The Bank of New York Mellon f/k/a The Bank of New York as successor trustee for JPMorgan Chase Bank, N.A., as Trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2005-2.

3. Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Atlantic Law Group, LLC.

4. If you notify Atlantic Law Group, LLC in writing within the thirty day period that the debt, or any portion thereof, is disputed, Atlantic Law Group, LLC will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to you by the debt collector; and

5. Upon your written request within the thirty day period, Atlantic Law Group, LLC will provide you with the name and address of the original creditor, if different from the current creditor.

Our File No. 564331



**"EXHIBIT 2"**

From:
Daniel Tabb, Jr. and Dana Tabb
202 E. Wayne Way
Middletown, DE 19709

August 28, 2015

To:
Atlantic Law Group, LLC
913 North Market Street, Suite 1011
Wilmington, DE 19801

In Re: "Consumer Notice of Dispute"

Dear Atlantic Law Group, LLC,

This writing is in response to your letter dated July 28, 2015 in reference to your
law firm being retained by Ocwen Loan Servicing, LLC (hereinafter "Ocwen") on behalf
of The Bank of New York Mellon f/k/a The Bank of New York as successor trustee for
JPMorgan Chase Bank, N.A., as Trustee for the benefit of the Certificateholders of
Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2005-2 (hereinafter "The
Bank of New York Mellon"). This is an official dispute of any and all claims by The
Bank of New York Mellon and Ocwen.

Daniel Tabb, Jr. and Dana Tabb, pursuant to 15 USC §1692g, Fair Debt
Collection Practices Act (FDCPA) and hereby disputes the alleged debt Ocwen and The
Bank of New York Mellon claims stated within your letter dated July 28, 2015.
Therefore, this Notice shall be deemed a request/demand for "verification" and debt
validation as defined by 15 USC § 1692(g)(1)(2)(5)(b).

Unfortunately, we have no recollection of the alleged debt your client is stating
we have an obligation to. It is therefore imperative that you comply with federal and state
law in order for us to investigate the matter and either determine the debt is valid, or in
the alternative not a valid debt. If the alleged debt is determined to be valid, otherwise
requiring our contractual performance, we will comply with all elements pursuant to the
said contract and agreement. However, based upon the information contained herein, we
are able to give merit to your demands.

Accordingly, we dispute as to the identity of the true owner (if any) of this alleged
debt, the alleged amount due and owing in its entirety, we dispute all signatures

1

appearing on Debt Collector Ocwen documents, and the debt collector alleged authority and capacity to collect and or sue on behalf of The Bank of New York Mellon. Ocwen and The Bank of New York Mellon are "Debt Collectors" as that term is defined by 15 USC §1692a(6). Daniel Tabb, Jr. and Dana Tabb are "consumers" as that term is defined by 15 USC §1692a(3). Debt Collectors Ocwen and The Bank of New York Mellon are attempting to collect a "household debt" as that term is defined by 15 §1692a(5). Consumers disputes the alleged amounts due and owing and demands a full accounting inclusive of each payment made, and or not made from inception.

Accordingly, since it appears the Debt Collectors are attempting to collect an alleged debt regarding a Promissory Note and alleged default, Daniel Tabb, Jr. and Dana Tabb demands the following information be provided in accordance with law and the alleged mortgage contract;

1. The true and correct copy of the "genuine original" debt instrument in your possession;

2. Who is the purchaser of the Promissory Note?

3. How did the purchaser pay for the Promissory Note?

4. Provide certified copies of the financial instrument that the Note owner got paid with;

5. Provide the exact date that the Purchaser purchased the Promissory Note;

6. Has the Promissory Note been special endorsed to The Bank of New York Mellon or endorsed in blank;

7. Provide a certified copy of the contract between Ocwen and the Bank of New York Mellon giving Ocwen the explicit authority to foreclose on the behalf of The Bank of New York Mellon;

8. Provide a certified copy of the cancelled check (front and back) that Ocwen or The Bank of New York Mellon paid Popular Financial LLC on Daniel Tabb, Jr. and Dana Tabb behalf;

9. The exact amount of the alleged principal amount due including all fees, interest, escrow and any other charges calculated in that alleged amount. These calculations must itemized separately and in a manner easy to read. The

2

verification of the alleged debt must categorically describe the amount of
interest charged by your client, and from what date, period;

10. Provide a copy of all notices of default that were served, the date(s) the loaned
    was allegedly defaulted on, the date the loan was matured, (if applicable);

11. Provide a copy of the notice of acceleration sent to Daniel Tabb, Jr. and Dana
    Tabb by Ocwen or The Bank of New York Mellon;

12. Please also provide the name, address, telephone number of the alleged
    original creditor which you have validated/verified the alleged debt with. If
    not the original creditor, the creditor acting in that capacity. We must be
    provided this information so we may investigate the matter in case legal action
    is needed on our part;

13. Please also provide a certified financial statement/financial audit, which
    verifies that your client suffered a financial injury as a result purchasing the
    loan from Popular Financial, LLC;

14. Please also provide evidentiary proof of how the monetary funds were
    allegedly loaned to us:

15. Please also provide a certified copy and strict proof of the General Ledger
    Account regarding the current loan account number that is sworn and
    subscribed to under penalty of perjury.

Be advised that failure to provide the specific information "prior to taking any
further collection action" may be a violation of law to which we may take legal action
against you and your client. Additionally, it is important to note that we intend to satisfy
any legal and lawful obligation required of us, if your client alleged debt proves valid.
Therefore the requirements set forth above will ensure both parties are protected.

Please take notice that any lawsuits brought against your client will have to be
filed with the Securities and Exchange Commission and reported to the Better Business
Bureau (BBB), which would be detrimental to your client business credit file. This a
constructive notice that, absent the validation of your claim within 30 days, you must

3

CEASE and DESIST any and all collection activity and are prohibited from contacting us by phone, at our home, or at our jobs.

Dated: _8 / 28 / 15_

Dated: _8 / 28 / 15_

Daniel Tabb, Jr.

Dana Tabb

**"EXHIBIT 3"**

B18 (Official Form 18) (12/07)

# United States Bankruptcy Court

### District of Delaware
### Case No. 14−11647−CSS
#### Chapter 7

**In re** Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):

Daniel L. Tabb, Jr.                                   Dana L. Tabb
202 East Wayne Way                            202 East Wayne Way
Middletown, DE 19709                         Middletown, DE 19709

Social Security / Individual Taxpayer ID No.:
xxx−xx−4088                                         xxx−xx−9350

Employer Tax ID / Other nos.:

## DISCHARGE OF DEBTOR(S)

It appearing that the debtor(s) is entitled to a discharge,

**IT IS ORDERED:**

The debtor(s) is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: 10/20/14

Christopher S. Sontchi
United States Bankruptcy Judge

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**



# ATLANTIC
LAW GROUP, LLC

812 North Market Street, Suite 'G'
Wilmington, Delaware 9801
P 302 339-8800  F 302-215 0045
www.atlanticlawgrp.com

December 9, 2015

Daniel L. Tabb and Dana L. Tabb
202 East Wayne Way
Middletown, DE 19709

     Re:    Loan #7090991006
              Property Address: 202 East Wayne Way, Middletown, DE 19709

Dear Mr. and Ms. Tabb:

     We are in receipt of your letter dated August 28, 2015 disputing the above-referenced debt and requesting documentation of same. Please find enclosed a copy of the note and mortgage you executed on or about December 20, 2004 with Popular Financial Services, LLC. Also enclosed is a copy of the assignment of mortgage which assigned this debt to our client, The Bank of New York Mellon F/K/A The Bank of New York as Successor Trustee for JPMorgan Chase Bank, N.A., as Trustee for the Benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2005-2. Lastly, enclosed are copies of the demand letters sent to you.

     Please contact us if you would like reinstatement or payoff figures good through a certain date.

     Please do not hesitate to contact me if you have any questions in this regard.

                          Sincerely.

                          Melanie J. Thompson

MJT:mt
Enclosures

Tabb 603564

Customer

no Prev P

20050103-0000164
Pages: 25    F: $231.00
01/03/05 11:19:50 AM
T20050000113
Michael E. Kozikowski
New Castle Recorder   MTG

Record-y Return to:
CHARLES GRUVER, III P.A.
C/O GLOBAL TITLE, INC.
301 A STREET, SUITE 2
WILMINGTON, DE 19801

Parcel Number: 11-057-00-045

Prepared By: Natalie A. Moyer
301 Lippincott Drive
Marlton, NJ 08053
Return to: Popular Financial Services.
LLC
301 Lippincott Drive. Marlton.
NJ 08053
GTO442485

——————————— [Space Above This Line For Recording Data] ———————————

## MORTGAGE

MIN 1000466-0000492755-5

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated December 20, 2004   DLT
together with all Riders to this document.   DLT
(B) **"Borrower"** is Daniel L Tabb  and Dana L Tabb

Borrower is the mortgagor under this Security Instrument.
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument. MERS** is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

00603564
DELAWARE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3008  1/01

-6A(DE) (0005)
Page 1 of 17    MW 05/00    Initials: DLT  DLT
VMP MORTGAGE FORMS - (800)521-7291

25     p3

**(D) "Lender"** is Popular Financial Services, LLC

Lender is a Limited Liability Company
organized and existing under the laws of            Delaware
Lender's address is 301 Lippincott Drive, Marlton, NJ 08053

**(E) "Note"** means the promissory note signed by Borrower and dated
December 20, 2004    . The Note states that Borrower owes Lender
Four Hundred Twenty Thousand and no/100

Dollars
(U.S. $420,000.00    ) plus interest. Borrower has promised to pay this
debt in regular Periodic Payments and to pay the debt in full not later than
January 1, 2035    .

**(F) "Property"** means the property that is described below under the heading "Transfer of
Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus
interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider [ ] Condominium Rider                    [ ] Second Home Rider
[ ] Balloon Rider          [X] Planned Unit Development Rider      [ ] 1-4 Family Rider
[ ] VA Rider               [ ] Biweekly Payment Rider             [ ] Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as
well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a
condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or
authorize a financial institution to debit or credit an account. Such term includes, but is not
limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.

00603564

-6A(DE) (0005)              Page 2 of 17        Initials DLT  DLT          Form 3008  1/01

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the           DELAWARE           [Type of Recording Jurisdiction]
of           NEW CASTLE           [Name of Recording Jurisdiction]:
SEE ATTACHED LEGAL DESCRIPTION

which currently has the address of
202 East Wayne Way   PENCADER                                    [Street]
HUNDRED (Middletown)                                             [City],
Delaware    19709    [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for 00603564

@D-6A(DE) (0005)                        Page 3 of 17           Initials: DLT DLT           Form 3008  1/01

Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payments to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic

00603564

-6A(DE) (0005)    Page 4 of 17    Initials: DLT DLT    Form 3008   1/01

Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by

00603564

RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the

00603564

-6A(DE) (0006)                                    Page 6 of 17                    Initials DLT DLT
                                                                                  Form 3008   1/01

insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after

00603564

-6A(DE) (0005)                      Page 7 of 17          Initials DLT  DLT
                                                          Form 3008  1/01

the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

00603564

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

00603564

-6A(DE) (0005)    Page 9 of 17    Initials: DLT  DLT    Form 3008  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in

00603564

Initials: DLT    DLT

-6A(DE) (0005)         Page 10 of 17         Form 3008   1/01

Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

00603564

-6A(DE) (0005)                    Page 11 of 17              Initials: DLT  DLT

                                                            Form 3008  1/01

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a)

00603564

pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials

00603564

containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees of      0.0000      % of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment) and costs of title evidence.

00603564

Initials: DLT  DLT

-6A(DE) (0005)                        Page 14 of 17                        Form 3008  1/01

**23. Satisfaction.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall cease and become void and of no effect and Lender shall cause the entry of satisfaction to be made upon the records of this Security Instrument. Borrower shall pay all costs and fees for entering the satisfaction upon the records of this Security Instrument. Lender may charge Borrower a fee for entering the satisfaction, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Future Advances.** This Security Instrument secures a maximum amount of up to 150% of the amount of the Note. This Security Instrument shall secure any additional loans as well as any and all present or future advances and readvances under the Note made by Lender to or for the benefit of Borrower or the Property, all of which shall be entitled to the benefits of this Security Instrument under 25 Del. Code Section 2118 and shall have the same lien priority as if the future loans, advances or readvances were made as of the date hereof including, without limitation: (a) principal, interest, late charges, fees and other amounts due under the Note or this Security Instrument; (b) all advances by Lender to Borrower or any other person to pay costs of erection, construction, alteration, repair, restoration, maintenance and completion of any improvements on the Property; (c) all advances made or costs incurred by Borrower for the payment of real estate taxes, assessments or other governmental charges, maintenance charges, insurance premiums, appraisal charges, environmental inspection, audit, testing or compliance costs, and costs incurred by Lender for the enforcement and protection of the Property or the lien of this Security Instrument; and (d) all legal fees, costs and other expenses incurred by Lender by reason of any default or otherwise in connection with the Note. Borrower agrees that if, at any time during the term of this Security Instrument or following a foreclosure hereof, Borrower fails to perform or observe any covenant or obligation under this Security Instrument including, without limitation, payment of any of the foregoing, Lender may (but shall not be obligated to) take such steps as are reasonably necessary to remedy any such nonperformance or nonobservance and provide payment thereof. All amounts advanced by Lender shall be added to the amount secured by this Security Instrument and shall be due and payable promptly after demand, together with interest at the rate of interest in effect under the Note, such interest to be calculated from the date of such advance to the date of repayment thereof. Borrower's obligations hereunder shall be continuing and shall survive notwithstanding a foreclosure of this Security Instrument.

00603564



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:



_____ (Seal)
Daniel L Tabb                    -Borrower

_____ (Seal)
DANA L. TABB                     -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                               -Borrower

00603564

-6A(DE) (0005)                    Page 16 of 17                    Form 3008  1/01

**STATE OF DELAWARE,**  **County ss:**

This instrument was acknowledged before me on           December 20, 2004           by
Daniel L Tabb and DANA L. TABB

My Commission Expires:

Notary Public

CHARLES GRUVER, III
ATTORNEY-AT-LAW
NOTARIAL OFFICER
29 Del. C. §4323(a)(3)

00603564

-6A(DE) (0005)                    Page 17 of 17          Initials DLT DLT          Form 3008   1/01

# ADJUSTABLE RATE RIDER

### (LIBOR Index - Rate Caps)

**MIN** 1000466-0000492755-5

THIS ADJUSTABLE RATE RIDER is made this   20th      day of December, 2004 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

Popular Financial Services, LLC

(the "Lender") of the same date and covering the property described in the Security Instrument and located at

202 East Wayne Way PENCADER ,HUNDRED (Middletown)     ,DE 19709
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of     7.0000      %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The interest rate I will pay may change on the first day of   January, 2007      and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date. "

00603564

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX - Single Family - Freddie Mac Modified Instrument

MW 05/00
Page 1 of 4

Initials: DLT
DLT

(3/28 & 3/27 LIBOR ARM RIDER)
3102-815R
JB 050008 07/21/00

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
Six and One / Half          percentage points (          6.5000          %) to the
Current Index. The Note Holder will then round the result of this addition to the next highest one-eighth of one percentage point (0. 125 %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than          10.0000          %
or less than          7.0000          %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one and one half  percentage points (1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than          13.0000          % or less than          7.0000          % over the life of the loan

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Initials: $DLT$    $DLT$

00603564

(2/28 & 3/27 LIBOR ARM RIDER)          Page 2 of 4
1192-815R
JB 050007 07/20/00

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: DLT   DLT

00603564

Page 3 of 4

(2/28 & 3/27 LIBOR ARM RIDER)
3192-815R
JB 050008 07/21/00

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Daniel L Tabb_ _____ (Seal)
Daniel L Tabb                     -Borrower

_Dana L Tabb_ _____ (Seal)
DANA L. TABB                     -Borrower

_____ (Seal)
                 -Borrower

_____ (Seal)
                 -Borrower

_____ (Seal)
                 -Borrower

_____ (Seal)
                 -Borrower

_____ (Seal)
                 -Borrower

_____ (Seal)
                 -Borrower

00603564

Page 4 of 4

(2/28 & 3/27 LIBOR ARM RIDER)
3192-815R
JB 050009 07/21/00

# PLANNED UNIT DEVELOPMENT RIDER

**MIN** 1000466-0000492755-5

THIS PLANNED UNIT DEVELOPMENT RIDER is made this          20th          day of
December, 2004          , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
Popular Financial Services, LLC

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

202 East Wayne Way  PENCADER ,HUNDRED (Middletown)     ,DE 19709
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in

Declaration of Covenants, Conditions & Restrictions

(the "Declaration"). The Property is a part of a planned unit development known as
VILLAGE OF FAIRVIEW FARM

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.
00603564

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3150 1/01
Page 1 of 3     Initials: D LT  DLT

⑦-7R (0008)     VMP MORTGAGE FORMS - (800)521-7291



**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

00603564

-7R (0008)                    Page 2 of 3              Initials: DLT DLT

Form 3150 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

Daniel L Tabb _____ (Seal)        Dana L Tabb _____ (Seal)
Daniel L Tabb           -Borrower     DANA L. TABB              -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                              -Borrower

00603564

-7R (0008)                    Page 3 of 3                    Form 3150 1/01

**Exhibit A**

Commitment for Title Insurance

# THE SECURITY TITLE GUARANTEE CORPORATION OF BALTIMORE

| Commitment No. | | Agent File No. |
|---|---|---|
| 813213 | | GT04-2485 |

### LEGAL DESCRIPTION

ALL that certain lot, piece or parcel of land, with the improvements thereon erected, situate in Pencader Hundred, New Castle County, Delaware, being Lot No. 70, as shown on the ^CPlan of VILLAGES AT FAIRVIEW FARM, as said Plan is recorded in the Office for the Recording of Deeds, in and for New Castle County, in Microfilm No. 12415, and being more particularly bounded and described in accordance with a recent mortgage inspection survey by East Coast Survey, Professional Land Surveying, Wilmington, Delaware, dated June 16, 2003, as follows, to wit:

BEGINNING at a point in the Southeasterly side of Shenandoah Street, at 50.00 feet wide, said point being the Northeasterly end of a 25.00 feet radius junction curve joining the Southeasterly side of Shenandoah Street with the Northeasterly side of East Wayne Way, at 50.00 feet wide; thence from said Beginning point, continuing along the Southeasterly side of Shenandoah Street, and along the Northwesterly side of a 10.00 feet wide permanent drainage easement, North 15 degrees, 50 minutes, 37 seconds East, 185.00 feet to a point; thence along the common division line for Lot No. 71, South 74 degrees, 09 minutes, 23 seconds East, 186.74 feet to a point; thence along the common division line for Lot No. 69, South 15 degrees, 50 minutes, 37 seconds West, 210.00 feet to a point in the aforesaid Northeasterly side of East Wayne Way, said point also being in the Southwesterly side of a 10.00 feet wide permanent drainage easement; thence thereby, North 74 degrees, 09 minutes, 23 seconds West, 161.74 feet to a point of curve of the aforesaid 25.00 radius junction curve joining the Northeasterly side of East Wayne Way with the Southeasterly side of Shenandoah Street; thence by said 25.00 radius junction curve to the right, an arc distance of 39.27 feet to the point and place of Beginning. Be the contents thereof what they may.

| Electronic Recording | |
|---|---|
| Instr: 201408260037364 | 08/26/2014 |
| Pages: 3    Fees: $64.00 | 08:50:29AM |
| Michael E. Kozikowski | T20140023618 |
| New Castle County Recorder | ASG |

Parcel Number: 11-057.00-043
RETURN TO:
Prepared by: Gina Herman/PD
When Recorded Mail To: **and prepared by:**
Ocwen Loan Servicing,LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835
MIN#:  1000466-0000492755-5

## DELAWARE
## ASSIGNMENT OF MORTGAGE

Parcel Number: 11-057.00-043
To: Recorder of Deeds
**NEW CASTLE** County
MERS Ph.#:  (888) 679 – 6377

This **ASSIGNMENT OF MORTGAGE** from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.(MERS)**, solely as nominee for **POPULAR FINANCIAL SERVICES, LLC**, its successors and/or assigns, whose address is 1901 E Voorhees Street, Ste C, Danville, IL 61834, PO Box 2026 Flint, MI 48501-2026 ("Assignor) to **THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS SUCCESSOR TRUSTEE FOR JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF POPULAR ABS, INC. MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-2**, whose address is c/o Ocwen Loan Servicing,LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 (Assignee).

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the right, title and interest of said Assignor in and to the following instrument describing land therein:

Mortgagor: DANIEL L. TABB AND DANA L. TABB
Mortgagee:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR POPULAR FINANCIAL SERVICES, LLC
Document Date:  DECEMBER 20, 2004
Amount: $420,000.00
Date Recorded:  JANUARY 03, 2005
Instrument : 20050103-0000164
Property Address: 202 EAST WAYNE WAY PENCADER, HUNDRED (MIDDLETOWN), DE 19709
Property described as follows:

*SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.*

Parcel Number: **11-057.00-043**
**RETURN TO:**
Prepared by: Gina Herman/PD
When Recorded Mail To:
Ocwen Loan Servicing,LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835
MIN#: 1000466-0000492755-5

This Assignment is made without recourse, representation or warranty.

Dated: 7-30-14

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS),
SOLELY AS NOMINEE FOR POPULAR FINANCIAL SERVICES, LLC,
ITS SUCCESSORS AND/OR ASSIGNS**

BY: _Brandy Berns_
NAME: Brandy Berns
TITLE: Assistant Secretary

Witnessed by:

NAME: _Conneran cantan_

STATE OF IOWA )
)ss.
COUNTY OF BLACK HAWK )

The foregoing instrument was acknowledged before me this **30th** day of **July**, 2014, by **Brandy Berns**, the Assistant Secretary at **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), SOLELY AS NOMINEE FOR POPULAR FINANCIAL SERVICES, LLC, its successors and/or assigns**, on behalf of the corporation. He\She is personally known to me.

_Karen Smith_

Notary Public --
State of IOWA

**Karen Smith**

> KAREN SMITH
> COMMISSION NO.784540
> MY COMMISSION EXPIRES
> JUNE 10, 2017

Parcel Number: **11-057.00-043**
**RETURN TO:**
Prepared by: Gina Herman/PD
When Recorded Mail To:
Ocwen Loan Servicing,LLC
5720 Premier Park Dr.
West Palm Beach, FL 33407
Phone Number: 561-682-8835
MIN#:  1000466-0000492755-5

## EXHIBIT:"A"

ALL that certain lot, piece or parcel of land, with the
improvements thereon erected, situate in Pencader Hundred, New
Castle County, Delaware, being Lot No. 70, as shown on the "CPlan
of VILLAGES AT FAIRVIEW FARM, as said Plan is recorded in the
Office for the Recording of Deeds, in and for New Castle County,
in Microfilm No. 12415, and being more particularly bounded and
described in accordance with a recent mortgage inspection survey
by East Coast Survey, Professional Land Surveying, Wilmington,
Delaware, dated June 16, 2003, as follows, to wit:

BEGINNING at a point in the Southeasterly side of Shenandoah
Street, at 50.00 feet wide, said point being the Northeasterly
end of a 25.00 feet radius junction curve joining the
Southeasterly side of Shenandoah Street with the Northeasterly
side of East Wayne Way, at 50.00 feet wide; thence from said
Beginning point, continuing along the Southeasterly side of
Shenandoah Street, and along the Northwesterly side of a 10.00
feet wide permanent drainage easement, North 15 degrees, 50
minutes, 37 seconds East, 183.00 feet to a point; thence along
the common division line for Lot No. 71, South 74 degrees, 09
minutes, 23 seconds East, 186.74 feet to a point; thence along
the common division line for Lot No. 69, South 15 degrees, 50
minutes, 37 seconds West, 210.00 feet to a point in the aforesaid
Northeasterly side of East Wayne Way, said point also being in
the Southwesterly side of a 10.00 feet wide permanent drainage
easement; thence thereby, North 74 degrees, 09 minutes, 23
seconds West, 161.74 feet to a point of curve of the aforesaid
25.00 radius junction curve joining the Northeasterly side of
East Wayne Way with the Southeasterly side of Shenandoah Street;
thence by said 25.00 radius junction curve to the right, an arc
distance of 39.27 feet to the point and place of Beginning. Be
the contents thereof what they may.

Ocwen
P.O. Box 24646
West Palm Beach, FL 33416-4646

Send Payments to:
P.O. Box 6440
Carol Stream, IL   60197-6440

Send Correspondence to:
P.O. Box 24738
West Palm Beach, FL  33416-4738



9314 8100 1170 0745 2918 41

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

**RETURN RECEIPT (ELECTRONIC)**

20140606-209

Daniel L. Tabb
202 E Wayne Way
Hundred (Middletown), DE 19709-0000



DEMAND05



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

June 04, 2014

VIA Certified Mail (return receipt requested)
Certified Number: 9314 8100 1170 0745 2918 41
Reference Code: 1405

Daniel L. Tabb
202 E Wayne Way
Hundred (Middletown), DE 19709-0000

Loan Number:        7090991006
Property Address:   202 E Wayne Way ,
                    Hundred (Middletown), DE 19709-0000

## NOTICE OF DEFAULT

### AVISO IMPORTANTE PARA PERSONAS DE HABLA HISPANA:

Esta notificación es de suma importancia. Puede afectar su derecho a continuar viviendo en su casa. Si no entiende su contenido, obtenga una traducción inmediatamente o contáctenos ya que tenemos representantes que hablan español y están disponibles para asistir.

Dear Borrower (s):

## SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY

If you have received a Chapter 7 discharge under the Bankruptcy Code of the United States or if your mortgage is the type which has been discharged pursuant to a completed Chapter 13 plan, this notice is not intended and does not constitute an attempt to collect a debt against you personally. If the foregoing applies to you, this notice is sent to you only as a preliminary step to a foreclosure on the mortgage against the above-referenced property. Provisions may be contained within your mortgage/deed of trust that require notice prior to foreclosure. As such, this is not an attempt to assert that you have any personal liability for this debt

In addition, if you have recently filed a petition under the Bankruptcy Code, this notice has been sent to you because OCWEN has not been notified of your bankruptcy case. If the foregoing applies to you, it is **IMPORTANT** that you or your bankruptcy attorney contact us immediately and provide us with the following information: date and jurisdiction of your filing, your case number and the bankruptcy chapter number under which you have filed.

If you have not recently filed bankruptcy or received a bankruptcy discharge, you are hereby notified that this letter is an attempt to collect a debt. All information obtained will be used for that purpose. The debt is owed to OCWEN as the owner or servicer of your home loan and mortgage.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of this letter, the debt will be assumed to be valid by OCWEN. If you notify OCWEN in writing within thirty (30) days that the debt or a portion of the debt is disputed, OCWEN will send you verification of the debt. If you would like to obtain such verification, direct your request in writing to the Loan Resolution Consultant within thirty (30) days. The failure to dispute the validity of the debt may not be construed by any court as an admission of liability by you.



7090991006                                                                                    DEMAND05.58

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

Your mortgage payments are past due, which puts you in default of your loan agreement. As of **June 04, 2014**, you owe the following:

| | |
|---|---|
| Principal and Interest | $ 3,541.60 |
| Interest Arrearage | $ 0.00 |
| Escrow | $ 691.48 |
| Late Charges | $ 531.24 |
| Insufficient Funds Charges | $ 0.00 |
| Fees / Expenses | $427.77 |
| Suspense Balance (CREDIT) | $ 420.83 |
| Interest Reserve Balance (CREDIT) | $ 0.00 |
| **TOTAL DUE** | **$ 4,771.26** |

On or before **July 04, 2014**, you must submit payment by Money Gram, Bank Check, Money Order or Certified Funds for the entire total due amount stated above to the appropriate address listed at the bottom of page two of this notice. Any payment(s) that become due in the interim must also be included.

Failure to bring your account current may result in our election to exercise our right to foreclose on your property. Upon acceleration, your total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect your total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable attorney's fees and costs. If your loan has already been accelerated and foreclosure proceedings already begun, we will continue the foreclosure action (if possible). You have the right to assert in court the non-existence of a default or any other defense to acceleration and foreclosure.

OCWEN will work with bankruptcy lawyers, foreclosure defense lawyers, housing counselors, and other authorized representatives of our customers. However, we will only release information once your written authorization has been obtained, as required by law.

After acceleration of the debt, but prior to foreclosure, you may have the right to reinstate the mortgage loan, depending on the terms of the note and mortgage. We encourage you to review the provisions of the note and mortgage. Please be aware that, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by OCWEN to enforce the mortgage in addition to the overdue amount on the mortgage. Any payment to reinstate the mortgage loan after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received that are less than the amount required to reinstate the mortgage loan will be returned, and will not stop any foreclosure proceedings that have begun. **PRIOR TO SUBMITTING PAYMENT, YOU MAY WISH TO CALL US TO VERIFY THE EXACT AMOUNT DUE.**

DEMAND05.58

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS # 1852



*Ocwen Loan Servicing, LLC*
*HELPING HOMEOWNERS IS WHAT WE DO!™*
WWW.OCWEN.COM

*Important Information for Customers in Washington*

Housing counselors and legal assistance may be available at little or no cost to you. If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

- The statewide foreclosure hotline recommended by the Housing Finance Commission:
  Toll-free: 1-877-894-HOME (1-877-894-4663)
  http://www.dfi.wa.gov/consumers/homeownership/post_purchase_counselors_foreclosure.htm

- United States Department of Housing and Urban Development:
  Toll-free: 1-877-741-3281
  Local counseling agencies in Washington:
  http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?webListAction=search&searchstate=WA&filterSvc=dfc

- The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys:
  Toll-free: 1-800-606-4819
  http://nwjustice.org/what-clear

In addition, a HUD counseling agency may be able to provide you with assistance. To locate the HUD approved counseling agency in your area, call the HUD Housing Counseling Service at (800) 569-4287 or consult HUD's website at www.HUD.gov.

## Your failure to contact a housing counselor or attorney may result in your losing certain opportunities, such as meeting with your lender or participating in mediation in front of a neutral third party.

If you are unable to bring your account current, we urge you to call us immediately to discuss possible alternatives to foreclosure.

If you have the desire to remedy this situation, we want to assist you in trying to reach that goal. OCWEN would like to present you with some of the alternatives that might be available regarding your delinquent mortgage loan. While our primary objective is the collection of past due amounts on your loan, we want to work with you to find the best available alternative for you to bring your mortgage loan obligation current.

Please visit our website at www.ocwen.com where you can review your account and enter your financial information at your convenience.



7090991006                               DEMAND05.5b

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS # 1852



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

Ramesh Sharma has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents

Sincerely,

Ocwen Loan Servicing, LLC
Toll Free Phone: 800-746-2936

**ADDRESS WRITTEN CORRESPONDENCE TO:**
Research Department
Ocwen Loan Servicing, LLC
P.O. Box 24736
West Palm Beach, FL 33416-4736

**PAYMENT REMITTANCE INFORMATION (always include Loan # 7090991006 with your payment)**

**Money Gram**
Receive Code: 2355
Payable To: Ocwen Loan Servicing, LLC
City: Orlando
St: FL
Agent Locater:800-926-9400
Loan # **7090991006**

**Overnight Address**
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Attention: Cashiering Department

**VIA Regular Mail**
Ocwen Loan Servicing, LLC
P.O. Box 6440
Carol Stream, IL 60197-6440

**WESTERN UNION**
**BY WUQC**
**Code City:** Ocwen
**State:** FL
**Reference:** Loan # **7090991006**

DEMAND05.58

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS # 1852



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

# Information and documents that you may want to collect before discussing options for avoiding foreclosure

When discussing available foreclosure alternatives with our Home Retention Department, we will need to determine your eligibility for different programs. The exact documentation required to apply for each program is slightly different. For the Home Affordable Modification Program (HAMP), you will need to provide extensive documentation. Though not necessarily required for an initial discussion of foreclosure options, we suggest that you collect the following documents prior to speaking with associates in our Home Retention Department. Please try to assemble the most recent documentation you have.

*Income Documentation:*

- Your most recently filed state and federal tax returns with all schedules and W-2.
- Your two most recent paystubs, reflecting your year-to-date income. If there are multiple borrowers, please collect the paystubs for each borrower.
- Any records of bonuses, commissions, housing allowances or tips.
- If you are self-employed, your most recently quarterly or year-to-date profit/loss statement(s).
- If you collect social security, disability, pension, public assistance or unemployment benefits, benefit documentation stating the amount, frequency and duration of your benefit(s) and a copy of your two most recent bank statements.
- If you receive alimony or child support income or payments, a copy of the agreement or decree that states the amount of the alimony or child support and period of time over which it will be received and proof of payment, such as deposit slips, bank statements, court verification or tax returns.

*Asset Information:*

- Documentation of checking, savings, money market and IRA/Keogh accounts.
- Documentation of stocks, bonds and certificates of deposit.
- Documentation of 401K, employee stock ownership plan participation.
- Description of other assets, including investment properties, rental income and costs.

*Monthly Housing and Living Expense Information*

- Account statements for any other mortgages on your property and homeowners association dues.
- Account statements for property taxes, utilities and telephone.
- Account statements for homeowners, car, life and health insurance.
- Account statements for credit cards, student loans, car payments and other loan obligations.
- Documentation that enables you to estimate any other expenses, such as food, gas, clothing, tuition or alimony or child support payments.



 DEMAND05.58

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

*NMLS # 1852*



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

**HELPING YOU STAY IN YOUR HOME.**


MAKING HOME AFFORDABLE

*You may be able to make your payments more affordable.*
*Act now to get the help you need!*

Dear Borrower,

There is help available if you are having difficulty making your mortgage loan payments. You may be eligible for the Home Affordable Modification Program, part of the initiative announced by President Obama to help homeowners.

**As your mortgage loan servicer, we will work with you in an effort to make your mortgage payment affordable. You will not pay any fees to take advantage of this opportunity to modify your mortgage loan payment and keep your property. Now is the time to act. We are ready to help you.**

**Here's how it works: We will first determine if you are eligible based on your situation. To conduct this evaluation, we need you to submit an Initial Package consisting of a Request for Mortgage Assistance form (including all necessary certifications), an IRS Form 4506T-EZ or Form 4506-T, and documentary evidence of all income. You may obtain the Request for Mortgage Assistance form and the IRS Form 4506T-EZ or Form 4506-T form at www.ocwencustomers.com.**

If you are eligible, we will look at your monthly income and housing costs, including any past due payments, and then determine an affordable mortgage payment.

At first, you will make new, affordable monthly payments on your mortgage loan during a trial period. If you make those payments successfully and fulfill all trial period conditions, we will permanently modify your mortgage loan.

The modification may involve some or all of the following changes to your mortgage loan: 1) Bringing your account current; 2) Reducing the interest rate on your loan; 3) Extending the term of the loan, and/or 4) delaying your repayment of a portion of the mortgage principal until the end of the loan term.

**STEP 1**      GATHER THE INFO WE NEED TO HELP YOU

To take advantage of this opportunity and the Home Affordable Modification Program, contact us as soon as possible. To help speed the process it will be helpful if you have the following information when you call:

- **Loan number**
- **Monthly pre-tax income of each borrower**
- **Information about any financial hardship you are suffering**

If you do not qualify for a loan modification under this program, or do not want to stay in your home or keep your rental property, we will work with you to explore other options available to help you keep your property or ease your transition to a new home, if applicable.

**STEP 2**      CONTACT US

We want to make modifying your mortgage loan as easy as possible. However, you must take the first step by contacting us at (800) 746-2936; Monday to Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm, and Sunday 9:00 am to 9:00 pm ET. You may also write to us at the address at the bottom of this letter. Be sure to include the information listed above.

Sincerely,
Ocwen Loan Servicing
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

The *Making Home Affordable* program was created to help millions of homeowners refinance or modify their mortgages. As part of this program, we — your mortgage servicer — and the Federal Government are working to offer you options to help you stay in your home.

7090991006                                                                                        DEMAND05.58

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS # 1852



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

## FINANCIAL COUNSELING SERVICES

When you are experiencing a financial hardship, counseling may be a way to help you manage your finances. We urge you to contact HUD approved agencies to obtain assistance in keeping your home. This assistance is available at no charge. For specific guidance on this notice or information related to the Home Affordable Modification Program, ask the counselor for MHA HELP.

| | | |
|---|---|---|
| **HUD Approved Housing Counseling:** | **1-800-569-4287** | www.HUD.gov |
| **HOPE Hotline Number:** | **1-888-995-4673** | |

## Beware of Foreclosure Rescue Scams. Help is free!

- There is never a fee to get assistance or information about the Making Home Affordable Program from your lender or a HUD-approved housing counselor

  - For a HUD approved counselor, visit
    http://www.hud.gov/offices/hsg/sfh/hcc/c/

- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan



7090991006

DEMAND05.58

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS # 1852



**ATLANTIC**
LAW GROUP, LLC

913 North Market Street, Suite 1011
Wilmington, DE 19801
P 302-339-8800  F 302-213-0043
www.atlanticlawgrp.com

**PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**IN THE EVENT YOU ARE SUBJECT TO AN AUTOMATIC STAY ISSUED BY A UNITED STATES BANKRUPTCY COURT OR THE REFERENCED DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS COMMUNICATION IS NOT INTENDED TO BE AN ATTEMPT TO COLLECT A DEBT.**

**IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS, PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT.**

July 28, 2015

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED and FIRST CLASS MAIL

Mr. Daniel L. Tabb, Jr.
202 East Wayne Way
Middletown, DE 19709

> RE:  Our File No. 564331
> Property Address: 202 East Wayne Way
> Middletown, DE 19709

Dear Mr. Tabb:

This law firm has been retained by Ocwen Loan Servicing, LLC regarding the Mortgage which encumbers the above real property. The Note evidencing the loan in the original principal amount of $420,000.00 and the Mortgage are collectively called the "Loan."

According to the records of our client, your Loan is in default. **As a result, the Loan has been accelerated and Ocwen Loan Servicing, LLC has referred the matter to our office for further action. Please see the next page for a statement of the amount owed and important additional information.**

You may have the right to reinstate the Loan by paying all past due installments, late charges, delinquent taxes, insurance premiums, and costs and fees incurred in the foreclosure. To request reinstatement information, contact our Loan Resolution Department at (703) 777-7101.

**Any right you may have to reinstate your Loan and the procedures for reinstatement outlined above do not alter or amend your validation rights as described on the back of this notice.**

Sincerely,

Daniel T. Conway, Esquire, I.D. No 5599
Atlantic Law Group, LLC

# VALIDATION OF DEBT NOTICE PURSUANT TO
# 15 USC §1692

1.  The amount of the debt as of August 3, 2015 is $365,632.15.

    Because of interest, fees and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount stated above. Please contact Ocwen Loan Servicing, LLC or Atlantic Law Group, LLC at (703) 777-7101 to obtain an updated payoff amount.

2.  The name of the creditor to whom the debt is owed is The Bank of New York Mellon f/k/a The Bank of New York as successor trustee for JPMorgan Chase Bank, N.A., as Trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2005-2.

3.  Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Atlantic Law Group, LLC.

4.  If you notify Atlantic Law Group, LLC in writing within the thirty day period that the debt, or any portion thereof, is disputed, Atlantic Law Group, LLC will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to you by the debt collector; and

5.  Upon your written request within the thirty day period, Atlantic Law Group, LLC will provide you with the name and address of the original creditor, if different from the current creditor.

Orlans*;Fair Debt Letter;N;N;None;AL;564331;C;7/28/2015

Mr. Daniel L. Tabb, Jr.
202 East Wayne Way
Middletown, DE 19709

Orlans*;Fair Debt Letter;N;N;None;AL;564331;F;7/28/2015

Mr. Daniel L. Tabb, Jr.
202 East Wayne Way
Middletown, DE 19709


**ATLANTIC**
LAW GROUP, LLC

913 North Market Street, Suite 1011
Wilmington, DE 19801
P 302-339-8800  F 302-213-0043
www.atlanticlawgrp.com

**PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**IN THE EVENT YOU ARE SUBJECT TO AN AUTOMATIC STAY ISSUED BY A UNITED STATES BANKRUPTCY COURT OR THE REFERENCED DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS COMMUNICATION IS NOT INTENDED TO BE AN ATTEMPT TO COLLECT A DEBT.**

**IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS, PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT.**

July 28, 2015

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED and FIRST CLASS MAIL

Mr. Daniel L. Tabb, Jr.
202 East Wayne Way
Middletown, DE 19709

> RE:  Our File No. 564331
> Property Address: 202 East Wayne Way
> Middletown, DE 19709

Dear Mr. Tabb:

This law firm has been retained by Ocwen Loan Servicing, LLC regarding the Mortgage which encumbers the above real property. The Note evidencing the loan in the original principal amount of $420,000.00 and the Mortgage are collectively called the "Loan."

According to the records of our client, your Loan is in default. **As a result, the Loan has been accelerated and Ocwen Loan Servicing, LLC has referred the matter to our office for further action. Please see the next page for a statement of the amount owed and important additional information.**

You may have the right to reinstate the Loan by paying all past due installments, late charges, delinquent taxes, insurance premiums, and costs and fees incurred in the foreclosure. To request reinstatement information, contact our Loan Resolution Department at (703) 777-7101.

**Any right you may have to reinstate your Loan and the procedures for reinstatement outlined above do not alter or amend your validation rights as described on the back of this notice.**

Sincerely,

Daniel T. Conway, Esquire, I.D. No 5599
Atlantic Law Group, LLC

# VALIDATION OF DEBT NOTICE PURSUANT TO 15 USC §1692

1. The amount of the debt as of August 3, 2015 is $365,632.15.

   Because of interest, fees and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount stated above. Please contact Ocwen Loan Servicing, LLC or Atlantic Law Group, LLC at (703) 777-7101 to obtain an updated payoff amount.

2. The name of the creditor to whom the debt is owed is The Bank of New York Mellon f/k/a The Bank of New York as successor trustee for JPMorgan Chase Bank, N.A., as Trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2005-2.

3. Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Atlantic Law Group, LLC.

4. If you notify Atlantic Law Group, LLC in writing within the thirty day period that the debt, or any portion thereof, is disputed, Atlantic Law Group, LLC will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to you by the debt collector; and

5. Upon your written request within the thirty day period, Atlantic Law Group. LLC will provide you with the name and address of the original creditor, if different from the current creditor.

Orlans*;Fair Debt Letter;N;N;None;AL;564331;C;7/28/2015

Mrs. Dana L. Tabb
202 East Wayne Way
Middletown, DE 19709



ATLANTIC
LAW GROUP, LLC

910 North Market Street, Suite 1011
Wilmington, DE 19801
P 302-339-8800  F 302-213-0043
www.atlanticlawgrp.com

**PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.  THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**IN THE EVENT YOU ARE SUBJECT TO AN AUTOMATIC STAY ISSUED BY A UNITED STATES BANKRUPTCY COURT OR THE REFERENCED DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS COMMUNICATION IS NOT INTENDED TO BE AN ATTEMPT TO COLLECT A DEBT.**

**IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS. PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT.**

July 28, 2015

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED and FIRST CLASS MAIL

Mrs. Dana L. Tabb
202 East Wayne Way
Middletown, DE 19709

> RE:   Our File No. 564331
>       Property Address: 202 East Wayne Way
>                         Middletown, DE 19709

Dear Mrs. Tabb:

This law firm has been retained by Ocwen Loan Servicing, LLC regarding the Mortgage which encumbers the above real property.  The Note evidencing the loan in the original principal amount of $420,000.00 and the Mortgage are collectively called the "Loan."

According to the records of our client, your Loan is in default.  **As a result, the Loan has been accelerated and Ocwen Loan Servicing, LLC has referred the matter to our office for further action.  Please see the next page for a statement of the amount owed and important additional information.**

You may have the right to reinstate the Loan by paying all past due installments, late charges, delinquent taxes, insurance premiums, and costs and fees incurred in the foreclosure.  To request reinstatement information, contact our Loan Resolution Department at (703) 777-7101.

**Any right you may have to reinstate your Loan and the procedures for reinstatement outlined above do not alter or amend your validation rights as described on the back of this notice.**

Sincerely,

Daniel T. Conway, Esquire. I.D. No 5599
Atlantic Law Group, LLC

# VALIDATION OF DEBT NOTICE PURSUANT TO
# 15 USC §1692

1. The amount of the debt as of August 3, 2015 is $365,632.15.

   Because of interest, fees and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount stated above. Please contact Ocwen Loan Servicing, LLC or Atlantic Law Group, LLC at (703) 777-7101 to obtain an updated payoff amount.

2. The name of the creditor to whom the debt is owed is The Bank of New York Mellon f/k/a The Bank of New York as successor trustee for JPMorgan Chase Bank, N.A., as Trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2005-2.

3. Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Atlantic Law Group, LLC.

4. If you notify Atlantic Law Group, LLC in writing within the thirty day period that the debt, or any portion thereof, is disputed, Atlantic Law Group, LLC will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to you by the debt collector; and

5. Upon your written request within the thirty day period, Atlantic Law Group, LLC will provide you with the name and address of the original creditor, if different from the current creditor.

Orlans*;Fair Debt Letter;N;N;None;AL;564331;F;7/28/2015

Mrs. Dana L. Tabb
202 East Wayne Way
Middletown, DE 19709



ATLANTIC
LAW GROUP, LLC

913 North Market Street, Suite 1011
Wilmington, DE 19801
P 302-339-8800 F 302-213-0043
www.atlanticlawgrp.com

**PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, THIS IS A COMMUNICATION FROM
A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.**

**IN THE EVENT YOU ARE SUBJECT TO AN AUTOMATIC STAY ISSUED BY A UNITED STATES
BANKRUPTCY COURT OR THE REFERENCED DEBT HAS BEEN DISCHARGED IN BANKRUPTCY,
THIS COMMUNICATION IS NOT INTENDED TO BE AN ATTEMPT TO COLLECT A DEBT.**

**IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS,
PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO PROTECTIONS UNDER THE
SERVICEMEMBERS CIVIL RELIEF ACT.**

July 28, 2015

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED and FIRST CLASS MAIL

Mrs. Dana L. Tabb
202 East Wayne Way
Middletown, DE 19709

      RE:    Our File No. 564331
              Property Address: 202 East Wayne Way
              Middletown, DE 19709

Dear Mrs. Tabb:

This law firm has been retained by Ocwen Loan Servicing, LLC regarding the Mortgage which
encumbers the above real property. The Note evidencing the loan in the original principal amount
of $420,000.00 and the Mortgage are collectively called the "Loan."

According to the records of our client, your Loan is in default. **As a result, the Loan has been
accelerated and Ocwen Loan Servicing, LLC has referred the matter to our office for
further action. Please see the next page for a statement of the amount owed and
important additional information.**

You may have the right to reinstate the Loan by paying all past due installments, late charges,
delinquent taxes, insurance premiums, and costs and fees incurred in the foreclosure. To
request reinstatement information, contact our Loan Resolution Department at (703) 777-7101.

**Any right you may have to reinstate your Loan and the procedures for reinstatement
outlined above do not alter or amend your validation rights as described on the back of
this notice.**

                   Sincerely,

                   Daniel T. Conway, Esquire, I.D. No 5599
                   Atlantic Law Group, LLC

# VALIDATION OF DEBT NOTICE PURSUANT TO 15 USC §1692

1. The amount of the debt as of August 3, 2015 is $365,632.15.

   Because of interest, fees and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount stated above. Please contact Ocwen Loan Servicing, LLC or Atlantic Law Group, LLC at (703) 777-7101 to obtain an updated payoff amount.

2. The name of the creditor to whom the debt is owed is The Bank of New York Mellon f/k/a The Bank of New York as successor trustee for JPMorgan Chase Bank, N.A., as Trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2005-2.

3. Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Atlantic Law Group, LLC.

4. If you notify Atlantic Law Group, LLC in writing within the thirty day period that the debt, or any portion thereof, is disputed, Atlantic Law Group, LLC will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to you by the debt collector; and

5. Upon your written request within the thirty day period, Atlantic Law Group, LLC will provide you with the name and address of the original creditor, if different from the current creditor.

Our File No. 564331